# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **BEVERLY A. LAVIGNE,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | )     *No. 1:13-cv-397-DBH* |
| | ) |
| **FRANKLIN COUNTY COURT, et al.,** | ) |
| | ) |
| **Defendants** | ) |

## RECOMMENDED DECISION ON MOTIONS TO DISMISS

Defendants Franklin County Court, Donald Marden, and Vicky Hardy (together, "State Defendants") and defendant Joseph O'Donnell move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims against them by *pro se* plaintiff Beverly A. Lavigne. *See* Motion To Dismiss of Defendants Franklin County Court, Donald Marden, and Vicky Hardy ("State Defendants' Motion") (ECF No. 4) at 1-2; Defendant Joseph M. O'Donnell's Motion To Dismiss Complaint ("O'Donnell's Motion") (ECF No. 13) at 1-2. For the reasons that follow, I recommend that the court grant both motions.[1] The court's adoption of this recommendation would moot all remaining pending motions, *see* ECF Nos. 27, 28, 29, 31, 43, 65, except for Lavigne's request, contained within ECF No. 31, that I reconsider my denial of her motion to amend her complaint, *see* ECF Nos. 22, 25, with respect to which I reserved ruling, *see* ECF Nos. 31, 36. I now deny that request, reaffirming the bases for my ruling. *See* ECF No. 25.

---

[1] Lavigne filed an interlocutory appeal with the First Circuit on April 9, 2014. *See* ECF No. 61. "[A]s a general rule, the filing of a notice of appeal divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal." *United States v. Brooks*, 145 F.3d 446, 455 (1st Cir. 1998) (citation and internal quotation marks omitted). Yet, "if the notice of appeal is defective in some substantial and easily discernible way (if, for example, it is based on an unappealable order) or if it otherwise constitutes a transparently frivolous attempt to impede the progress of the case[,]" a district court may proceed. *Id.* at 456. Lavigne's appeal is transparently frivolous. She did not identify an order of this court from which she appealed, and she seemingly appealed state-court actions that have transpired since the filing of her complaint; for example, Maine Superior Court Justice Donald Marden's decision not to recuse himself from ongoing state-court proceedings after he was named a party in this case. *See* ECF No. 61.

# I. Applicable Legal Standards

## A. Rule 12(b)(1)

When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court has jurisdiction. *Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir. 1996). The moving party may use affidavits and other matter to support the motion, while the plaintiff may establish the existence of subject matter jurisdiction through extrapleading material. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 159–60 (3d ed. 2004); *see also Aversa,* 99 F.3d at 1210; *Hawes v. Club Ecuestre el Comandante,* 598 F.2d 698, 699 (1st Cir. 1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements, and an affidavit).

## B. Rule 12(b)(6)

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011). Ordinarily, in

weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II. Factual Background

This complaint arises out of *Ferry v. Lavigne*, Docket No. CV-94-61 (Me. Super. Ct.), pending in the Maine Superior Court, Franklin County. Complaint in Tort ("Complaint") (ECF No. 1) ¶¶ 2, 5-6; *Ferry* Docket Sheet, Exh. A (ECF No. 4-1) to State Defendants' Motion. [2]

### A. The "Tortured History" of the *Ferry* Case

*Ferry*, which the Superior Court has described as having a "tortured history[,]" Findings and Order, *Ferry* (Me. Super. Ct. May 19, 2010) ("5/19/10 Order"), Exh. E (ECF No. 4-5) to State Defendants' Motion, at 2, commenced on July 26, 1994, when Lavigne's three siblings sued her, both individually and in her then-capacity as trustee of the Roger J. Lavigne Revocable Trust ("Trust"), as a result of disagreements over the administration of the Trust and the disposition of Trust property, *see Ferry* Docket Sheet at [1]; Order, *Ferry* (Me. Super. Ct. Sept. 12, 1997) ("9/12/97 Order"), Exh. B (ECF No. 4-2) to State Defendants' Motion, at 1-3. The *Ferry* plaintiffs sought relief that included Lavigne's removal as trustee. *See Ferry* Docket Sheet at [1].

---

[2] Lavigne names "Franklin County Court" as a defendant. Complaint at 1. The State Defendants reasonably construe this as a reference to the Maine Superior Court, Franklin County, where *Ferry* is pending. *See* State Defendants' Motion at 5. For ease of reference, I will henceforth refer to it as the "Superior Court."

The Trust was one of two *inter vivos* trusts created in Florida by Lavigne's parents, Roger and Germaine, as part of a testamentary scheme to avoid supervision by any court and to allow for the pour-over of assets from one trust to the other. *See* 9/12/97 Order at 1. The parents had collected a considerable estate during their lifetimes that included a substantial amount of real estate, including a motel in Florida, a significant amount of real estate in Maine, and a camp and boat slip in Sunapee, New Hampshire. *See id*. at 1-2. Roger predeceased Germaine. *See id*. at 2. Following Germaine's death, Lavigne's siblings filed suit against her in Florida, seeking a temporary restraining order ("TRO"), an order removing her as trustee of the Trust, an order requiring an accounting, and other relief. *See id*. at 2-3. The Florida court declined to take jurisdiction of the Trust, primarily because its assets were located mostly in Maine. *See id*. at 3. The siblings then commenced the *Ferry* suit in the Superior Court. *See id*. at 4.

On July 27, 1994, the Superior Court (Chandler, J.) granted the *Ferry* plaintiffs' request for a TRO. *See Ferry* Docket Sheet at [1]. On August 12, 1994, the court (Crowley, J.) commenced a preliminary injunction hearing but was unable to complete it. *See id*. at [1]-[2]. Because Justice Crowley was not going to preside in Franklin County for the rest of 1994, he continued the TRO until the matter could be reassigned. *See id*. at [2]. On October 28, 1994, following a two-day hearing, the Superior Court (Perkins, J.) vacated the TRO and denied the *Ferry* plaintiffs' request for a preliminary injunction, stating:

> [T]he Court is unable to find that the Defendant in her fiduciary capacity as trustee acted in bad faith or in any way intentionally or knowingly detrimental to the Plaintiffs' interest in the trust estate. Most of the Plaintiffs' evidence before the Court reflecting on Defendant's role as trustee was based on surmise or conjecture and was supported by little substantive material.

*Id*.; *see also* 9/12/97 Order at 4.

Following further proceedings, the Superior Court (Marsano, J.) conducted a six-day bench trial commencing in April 1997 on the complaint, which sought an injunction, the removal of Lavigne as trustee, and an accounting and surcharge, and a counterclaim by Lavigne seeking surcharges against the shares of each of the siblings and damages for alleged slander of title. *See* 9/12/97 Order at 5-6.

By decision dated September 12, 1997, the court (Marsano, J.) determined, as a threshold matter, that it had jurisdiction over the Trust pursuant to 18-A M.R.S.A. §§ 7-201 and 7-203. *See id.* at 3. It stated: "Although counsel for Beverly Lavigne has forcefully argued that the law of Florida controls the governance of this Court's actions, it is clear that there is no underlying contest to the jurisdiction of this Court, even though none of the pleadings ha[s] admitted the authority conferred by §7-201 and §7-203." *Id.*

The court entered judgment for the plaintiffs on Lavigne's claim of slander of title and surcharge request and for Lavigne on the plaintiffs' surcharge request, and denied the plaintiffs' request for injunctive relief. *See id.* at 12; *Ferry* Docket Sheet at [10]. With respect to the plaintiffs' bid to remove Lavigne as trustee, it stated that it would monitor the case for six months, during which Lavigne would continue to act as trustee with the advice of her attorney, filing a report every 60 days. *See* 9/12/97 Order at 20; *Ferry* Docket Sheet at [10].

The court found that, although Lavigne had not acted in bad faith, she had not acted in good faith, having "attempted to overuse her powers to her own economic advantage" and "charged an unreasonable trustee's fee." 9/12/97 Order at 14-15. It observed:

> [Lavigne's] difficulties derive from being extremely contentious, and self-centered. She is on a mission given to her by her parents which she says allows her to manage the Trust Estate in an extremely complicated way . . . . Her own obstinacy and lack of good faith has caused this matter to unreasonably escalate. She has created a job for herself and has not acted in the best interest of the trust.

*Id*. at 7-8 (internal quotation marks omitted). The court capped Lavigne's trustee fee, *see id*. at 17, and instructed, "it is now time for Ms. Lavigne to arrange the affairs of this trust and conclude it because the time for orderly distribution has long since passed[,]" *id*. at 19.

Approximately one year later, the parties appeared before the court again on several motions filed by Lavigne. *See* Order, *Ferry* (Me. Super. Ct. Oct. 28, 1998), Exh. C (ECF No. 4-3) to State Defendants' Motion. The court (Kravchuk, J.) denied Lavigne's motions, which included requests for additional attorney and trustee fees, and ordered that she continue to sell property of the Trust. *See id*.

Little then transpired on the *Ferry* docket until May 1, 2009, when plaintiff Vivian Savage filed a motion for an order requiring Lavigne to comply with two earlier court orders. *See Ferry* Docket Sheet at [13]-[14]; 5/19/10 Order at 5. The plaintiffs alleged that Lavigne had breached her fiduciary duties as trustee by not selling trust property, not properly distributing the proceeds of sales of real estate that was sold, making improper payments to herself, and failing to make a full and complete accounting to the court. *See* 5/19/10 Order at 1.

After meeting with counsel on October 27, 2009, the court ordered Lavigne to file a full and true accounting. *See id*. On November 30, 2009, she filed an accounting that the court described as listing no financial or bank accounts, providing only sketchy information about income and receipts, and unsupported by any documentation. *See id*. at 2. Savage objected to the accounting and requested a hearing, which was held on May 12, 2010, and during which Lavigne appeared with counsel. *See id*. at 2, 5.

By decision dated May 19, 2010, the court (Delahanty, J.) ordered Lavigne's immediate removal as trustee and plaintiff Gail Ferry's immediate appointment as successor trustee. *See id*. at 7-8. It ordered Lavigne to forthwith turn over to Ferry full possession of all relevant documents

and directed that any real estate that had been deeded to any party in the action be conveyed back to the Trust within 21 days of the date of its order.  *See id*. at 8.  It appointed a certified public accountant to conduct an accounting and audit of the Trust's financial records.  *See id*.  The court observed:

> During her testimony, it became apparent to the court that Beverly Lavigne continues to approach her supervision and management of the trust with the same dis[d]ain for her legal obligations as she did when Justice Marsano made his findings.  Notwithstanding the court's admonitions, she would not give a straight answer to counsel on examination, she refused to let counsel complete his questions and continued to interrupt and attempted to offer her explanation of a fact regardless of the question.  She offered no explanation for the failure to file a full accounting.
>
> ***
>
> It is clear to the court that the defendant is not competent to continue to act as trustee.

*Id.* at 6.

On June 8, 2010, Lavigne appealed the order to the Law Court.  *See Ferry* Docket Sheet at [16].  On March 28, 2011, the Law Court dismissed the appeal as untimely in part and interlocutory in part.  *See id*.

On May 11, 2012, Ferry filed a motion to enforce the court's May 19, 2010, order that Lavigne return all Trust assets and to require her to pay taxes, penalties, and costs incurred with respect to the real estate.  *See id* at [17]; Order, *Ferry* (Me. Super. Ct. Oct. 15, 2012) ("10/15/12 Order"), Exh. F (ECF 4-6) to State Defendants' Motion, at 2.  On July 9, 2012, Lavigne filed a motion to dismiss for lack of jurisdiction and procedural due process, and on September 25, 2012, she filed a motion for "contempt."  *See Ferry* Docket Sheet at [17]-[18].

A hearing was held on October 5, 2012, during which new counsel made a limited appearance on behalf of Lavigne.  *See id*. at [18].  It was "stipulated that other than the reference

of books and papers to the accountant, no mandates under the May 19, 2010 Order ha[d] been complied with." 10/15/12 Order at 2.

The Superior Court (Marden, J.) issued a decision dated October 15, 2012, in which it noted that Lavigne had testified that the Trust no longer existed and had been "closed out in the State of Florida, without accounting[,]" and that this created "doubt in the court's mind . . . whether Ms. Ferry has been appointed trustee of a viable legal entity subject to hold property." *Id.* at 3. However, it stated, "It is this court's duty to enforce its order of May 19, 2010." *Id.* The court ordered, *inter alia*, that, within 20 days, plaintiff Roger Lavigne Jr. ("Roger Jr.") and defendant Lavigne prepare, execute, and deliver to Ferry deeds transferring all real estate formerly held by the Trust on the Old Dead River Road in Eustis, Maine. *See id.* It warned that failure to comply with that order would constitute contempt of the court's May 19, 2010, order and subject Lavigne to a penalty of $50 per day for non-compliance. *See id.*

In the same order, the Superior Court also denied Lavigne's pending motions. *See id.* at 4. With respect to the motion to dismiss for lack of jurisdiction and procedural due process, it found that, although Lavigne complained that she had been denied notice and an opportunity to attend a May 24, 2012, status conference, she had not been responsibly assuring the court clerk of her proper mailing address at that time. *See id.* It denied the motion for contempt for lack of supporting evidence. *Id.*

On October 31, 2012, Lavigne appealed the court's October 15, 2012, order to the Law Court. *See Ferry* Docket Sheet at [19]. On November 5, 2012, she also filed, in the Superior Court, a motion to vacate orders and for a preliminary injunction. *Id.*

By decision dated November 7, 2012, the Superior Court (Marden, J.) determined that Lavigne had not complied with its October 15, 2012, order. Order, *Ferry* (Me. Super. Ct. Nov. 7,

2012) ("11/7/12 Order"), Exh. G (ECF No. 4-7) to State Defendants' Motion, at 1. The court noted that Lavigne had tendered deeds to her three siblings, one of whom, Roger Jr., had recorded his, while Ferry and Savage had not accepted theirs or recorded them. *See id*. The court found that because Lavigne had not paid real estate taxes and had been under order since 2010 to convey property to Ferry as trustee, "it must act to preserve the property for the benefit of the beneficiaries of the Roger J. Lavigne Trust by assuring that all right, title, and interest to the remaining lands are properly in the name of Gail L. Ferry, Trustee[.]" *Id*. It ordered, in relevant part:

> Joseph O'Donnell, Esq., counsel for Vivian Savage[,] shall prepare a deed conveying to Gail L. Ferry, as Trustee, all right, title, and interest in the real estate in question. Said deed is to be delivered post haste to Vicki Hardy, Clerk of the Franklin Superior Court, who, as a disinterested person, is appointed to execute and deliver such deed pursuant to Maine Rules of Civil Procedure 70 with full and complete power of substitution, and with every other party and authority to execute and deliver such document. The deed or instrument and all related documents, if executed by the Clerk of the Court, will have the same force and effect as though executed and delivered by the parties or any one of them, as applicable.

*Id*. at 2.

On November 19, 2012, the Clerk's Deed and Transfer Tax Form were signed and delivered to the Franklin County Registry of Deeds. *Ferry* Docket Sheet at [19]. The same day, Lavigne filed an objection to the court's November 7, 2012, order with a declaratory judgment request. *Id*. On November 26, 2012, she filed a motion for the recusal of Justice Marden. *Id*. at [20]. On November 29, 2012, Justice Marden held a hearing on Lavigne's motions for an injunction, to vacate void orders, and for his recusal. *Id*. By order dated December 20, 2012, he denied all three, explaining:

> The court finds the defendant will not suffer an irreparable injury. The previous orders are not void and are the law of the case. The court declines to recuse; it is satisfied none of its orders or rulings are based upon undue bias or prejudice. The defendant was given full opportunity to be heard[.]

*Id*.

By letter dated May 13, 2013, Beth Maddaus, Manager, Clerks of Court, for Maine's Administrative Office of the Courts, informed Lavigne:

> Over the last few months, you and I have spoken several times with regard to your concerns with the Franklin County Consolidated Clerks Office. I have investigated your concerns and determined them to be unfounded. I have also had many conversations with the Clerk of the Court, Vicki Hardy, and understand that she and the clerks in her office feel that you have treated them in a disrespectful manner and have subjected them to verbal insults and personal attacks. I also understand you have insulted the Court Reporter who was assigned to a case in which you are a party.

> In the future if you have any questions about hearing dates or copies, you may direct them *in writing* to the Franklin County Consolidated Clerks Office . . . .

> For all other questions, I will be your point of contact within the Maine Judicial Branch. . . .

> **The clerks in Farmington will not answer any questions other than ones regarding hearing dates or copies and will only answer those in writing.** If you have a question on a hearing date or copies that needs an immediate response, you may contact my office . . . . I will respond to your request(s) as I am able, and will work with other Judicial Branch personnel as needed to answer your requests for information.

Letter dated May 13, 2013, from Beth Maddaus to Beverly Lavigne ("Maddaus Letter"), Exh. H (ECF No. 4-8) to State Defendants' Motion (emphasis in original).

### B. Lavigne's Allegations in This Case

By decision dated July 5, 2013, the Law Court denied Lavigne's appeal of the 10/15/12 Order. *See Ferry* Docket Sheet at [20].

On October 24, 2013, Lavigne filed the instant suit against not only the Superior Court but also Hardy, O'Donnell, and Justice Marden, each "individually while acting in [his or her] official capacity." Complaint at 1. The Complaint is difficult to comprehend. However, reading it against the backdrop of the *Ferry* materials summarized above, its gravamen appears to be that, since the

inception of *Ferry* and continuing, the State Defendants wrongfully have exercised authority over the Trust, Trust property, and property of Lavigne. Specifically, Lavigne alleges that:

1. Justice Marden wrongly ruled that the Superior Court had jurisdiction over the Trust, which was created in Florida and was by its own terms to be construed and regulated in accordance with the laws of that state. *See id*. ¶ 2. "The original error in law in Maine was when they took control of the Roger Lavigne Trust and referenced 7-203." *Id*. ¶ 14. The Superior Court lacked jurisdiction and authority to alter the wishes of the settlor of the Trust, and the defendants wrongfully interfered with or altered the Trust contract, creating lost or stolen assets. *See id*. ¶¶ 13, 15. This deprived Lavigne of the right to protect and preserve her interests and those of the Trust and to lose her inheritance. *See id*. ¶ 13. *Ferry*, a frivolous suit at its inception, still is pending 19 years later. *See id*. ¶ 19 (citing 1994 decision of the Superior Court (Perkins, J.) deeming Ferry unlikely to succeed on the merits of her claim).

2. Most recently, Justice Marden ordered property restored to the Trust, disregarding the fact that, pursuant to a signed settlement agreement, all deeds were delivered and final cash payments made pursuant to the Trust instructions, and the Trust was closed and no longer existed. *See id*. ¶¶ 20-21. "No court holds any venue or jurisdiction to recreate a trust of a deceased person." *Id*. ¶ 21.

3. Hardy committed "several criminal violations," on instruction from Justice Marden and using a deed prepared by O'Donnell, when she exercised unauthorized control over Lavigne's property, signed a fraudulent deed prepared by O'Donnell, and delivered a transfer tax form to the registry of deeds that included Lavigne's Social Security number, used without her permission. *See id*. ¶¶ 10, 21. Hardy, Justice Marden, and O'Donnell violated several Maine statutes pertaining to identity theft and fraud, for example, 17-A M.R.S.A. § 453 (unsworn falsification). *See id*. ¶ 10.

The defendants should have known that there would be a problem creating a deed originating from a deceased person, Roger Lavigne, and entity. *See id.* ¶ 11. Their actions constituted forgery. *See id.* ¶¶ 11-12 (citing, *inter alia*, 18 U.S.C. § 1028, relating to fraud and related activity in connection with identification documents).

4.      The Superior Court has acted in bad faith and with malicious intent, in a manner that constituted, among other things, an abuse of process and a violation of the Fourth and Fourteenth amendments. *See id.* ¶¶ 6-7. It has seized cash, papers, and most recently property and a private Social Security number. *See id.* ¶ 8.

5.      Justice Marden "illegally authorize[d]" the taking of sales proceeds from a sale of a Trust asset. *Id.* ¶ 16 (citing docket entry of November 25, 1996, reflecting that the court received $15,890.12 and deposited those funds into an escrow account); *see also Ferry* Docket Sheet at [5]. This "virtually paralyzed" Lavigne in attempting to tend to the Trust, and the money has never been accounted for. *Id.* ¶¶ 17-18 (citing 13 M.R.S.A. § 556, which requires that clerks of courts keep a true and exact account of all moneys received).[3]

6.      The Superior Court has denied Lavigne access by having the bailiff use intimidation, greet her, and escort her out of the building. *See id.* ¶ 25. This has been coercive and frightening and prevented Lavigne from obtaining pleadings. *See id.*

Lavigne seeks damages of $20 million and asks this court to "Rescind ALL the Lower Courts, Motion, Ruling and Proceedings" [sic] and "Return the Trust as it was created originally as well as the clouded title of real estate." *Id.* ¶¶ 27-28.

---

[3] The *Ferry* Docket Sheet refutes these allegations, reflecting that Lavigne sought the order of sale that generated the $15,890.12 in proceeds, and the Superior Court accounted for disbursements of those proceeds through the time that the final disbursement was made, and the escrow account was closed, on September 4, 1997. *See Ferry* Docket Sheet at [5]-[6], [8], [10].

### III.  Discussion

### A.  State Defendants' Motion

The State Defendants contend that the Complaint is frivolous and should be dismissed for many reasons:

1.    The Complaint fails to set forth sufficient facts to state a claim to relief that is plausible on its face and, therefore, should be dismissed pursuant to Rule 12(b)(6).  *See* State Defendants' Motion at 7.

2.    Judicial immunity bars any claim against Justice Marden and Hardy in their individual capacities, as a result of which any such claim should be dismissed pursuant to Rule 12(b)(6).  *See id*. at 7-9.

3.    Assuming *arguendo* that the court rules that the Complaint states a plausible claim for relief, sovereign immunity bars any claim against the Superior Court, or Justice Marden and Hardy in their official capacities, as a result of which any such claims should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  *See id*. at 10-14.

4.    Assuming *arguendo* that the court rules that the Complaint states a plausible claim for relief against a State Defendant that is not barred by sovereign immunity, the court should abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, to the extent that Lavigne asks the court to interfere in an ongoing state proceeding.  *See id*. at 14-17.

### 1.  Failure To Meet Pleading Standards

As a threshold matter, the State Defendants are correct that the Complaint fails to meet the pleading standards of Federal Rule of Civil Procedure 8, as construed in *Iqbal*, and should be dismissed in its entirety on that basis alone.  *See id*. at 6-7.  Although a complaint need not set forth "detailed factual allegations," it must provide more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint that offers merely "labels and conclusions . . . will not do." *Id*. (citation and internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (citation and internal punctuation omitted).

The Complaint consists largely of labels, conclusions, and naked assertions. *See generally* Complaint. For example, Lavigne asserts:

> Foremost and first of all, this court [presumably, the Superior Court] has acted in bad faith. It not only acted in bad faith but also with malicious intent for a decade, they knew they were doing wrong and continued. It was and is abuse of process also a violation of the 14th Amendment. Since 1994 repeated persecution without any evidence to support its accusations. The Defendant et al. has forced this frivolous action [presumably, *Ferry*] to be brought before you as a result of years of Civil Rights Violations and Constitutional Violations. Therefore the basis is in federal court jurisdiction.

*Id*. ¶ 6.

It is difficult to discern not only the factual bases for the Complaint but also Lavigne's causes of action. She styles the Complaint as brought "in tort" but also cites state and federal criminal statutes and a state civil statute and alleges civil rights and constitutional violations. *See id*. 1 & ¶¶ 3-7, 10, 12, 18, 22. The State Defendants understandably complain that they cannot determine what facts Lavigne is alleging and how her allegations might give rise to a plausible claim that any State Defendant violated her constitutional rights. *See* State Defendants' Motion at 7. In response to the State Defendants' Motion, Lavigne clarifies that she brings suit pursuant to 42 U.S.C. § 1983, alleging violations of her federal constitutional rights. *See* Response to Motion To Dismiss ("Response/State Defendants") (ECF No. 7) at 1-2. This advances the matter,

but does not cure the Complaint's pleading shortfalls, particularly with respect to the factual underpinnings of Lavigne's claims.[4]

Alternatively, even if the Complaint satisfied *Iqbal* pleading standards, judicial immunity bars Lavigne's claims against Justice Marden and Hardy in their individual capacities, and sovereign immunity bars her claims against the Superior Court, as well as Justice Marden and Hardy, in their official capacities.[5]  Because all three State Defendants are immune from suit, I do not reach the State Defendants' final alternative ground for dismissal based on *Younger* abstention.

## 2.  Judicial Immunity

The Supreme Court has explained:

Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.  Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.

Rather, our cases make clear that the immunity is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted).

Lavigne complains about Justice Marden's rulings in *Ferry*, which clearly are actions taken in his judicial capacity, despite her attempt to avoid the immunity bar by characterizing some of

---

[4] On January 15, 2014, the same day that the State Defendants filed their reply in support of their motion to dismiss, see ECF No. 15, Lavigne filed a document titled "Affidavit of Facts and Memoranda of Law" containing further arguments against the grant of the State Defendants' motion, to which she appended six attachments, *see* ECF No. 16. Lavigne did not seek leave of court to make this filing, which is not permitted as of right pursuant to this court's Local Rule 7.  *See* Loc. R. 7.  In any event, even taking the document and its attachments into consideration, nothing in them is outcome-determinative.

[5] As did the State Defendants, *see* State Defendants' Motion at 5, I have construed the Complaint liberally to allege claims against Justice Marden and Hardy in both their individual and official capacities, *see* Complaint at 1.

his rulings as "ministerial" and the Superior Court's use of her Social Security number without her knowledge or consent as "criminal." *See* Response/State Defendants at 4-8.

Reading the complaint liberally in view of Lavigne's *pro se* status, *see, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), she does allege that the Superior Court and/or Justice Marden acted in the absence of jurisdiction in several ways, to wit, by wrongfully assuming jurisdiction over a Florida-based trust, issuing orders in contravention of the Trust's terms, and directing that property be turned over to Ferry as trustee after the Trust had officially been closed and the property at issue had become that of Lavigne, *see* Complaint ¶¶ 2, 13-15, 21; *see also* Response/State Defendants at 3, 6. However, those allegations plainly are without merit.

Lavigne contends that the Superior Court had no business assuming jurisdiction over the Florida-created Trust. *See id.* Yet, even her counsel did not dispute that the court had the power to do so. *See* 9/12/97 Order at 3 ("Although counsel for Beverly Lavigne has forcefully argued that the law of Florida controls the governance of this Court's actions, it is clear that there is no underlying contest to the jurisdiction of this Court[.]"). That is not surprising, for the court simply applied then-applicable Maine law in a straightforward fashion, concluding that because the Florida courts had declined to assume jurisdiction over the Trust, it must do so. *See* 9/12/97 Order at 4 ("Because the bulk of the trust property at issue is located in Maine, and because the Florida court refused jurisdiction, this Court finds that the interests of justice would be seriously impaired absent proceedings before this Court.") (footnote omitted); 18-A M.R.S.A. § 7-203 (1997) ("The court will not, over the objection of a party, entertain proceedings under section 7-201 involving a trust registered or having its principal place of administration in another state, unless . . . (2) when the interests of justice otherwise would seriously be impaired."). The court plainly properly assumed jurisdiction over the Trust.

Lavigne also complains that Justice Marden applied the substantive law of Maine rather than that of Florida. *See* Complaint ¶ 2. However, that is beside the point: choice of law does not implicate a court's jurisdiction. *See, e.g., Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) (choice of law is not jurisdictional). Once the Superior Court properly assumed jurisdiction over the Trust, it had the power to decide which state's substantive law applied.

Nor did Justice Marden lack jurisdiction to issue orders concerning the internal affairs of the Trust, including taking measures to enforce the court's own orders. *See, e.g.*, 18-B M.R.S.A. § 201(1) ("The court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law."); *id.* § 201(3) ("A judicial proceeding involving a trust may relate to any matter involving the trust's administration . . . ."); *Yoder v. County of Cumberland*, 278 A.2d 379, 390 (Me. 1971) ("The power of a court to enforce compliance with any decree or order issued by it has existed from earliest times and the power must be held inherent in the very establishment of a court since it was useless to establish courts unless they had authority to punish acts which might interrupt the orderly course of judicial procedure; and it was likewise futile to confer jurisdiction to issue orders without the power to enforce obedience to such decrees.") (citations and internal quotation marks omitted).

Finally, even accepting, as alleged by Lavigne, that the Trust no longer existed when Justice Marden issued orders directing the transfer of property to Ferry in her capacity as trustee, *see* Complaint ¶¶ 20-23, that event had no effect on the court's jurisdiction. Although Ferry alleges that there was a settlement of the siblings' differences, a distribution of the Trust's remaining assets, and a closeout of the Trust, *see id.* ¶ 20, two of Lavigne's siblings refused to accept the deeds that she had tendered to them and continued to invoke the jurisdiction of the Superior Court to resolve disputes over the Trust's administration, *see* 10/15/12 Order at 2. The Superior Court

was empowered both to resolve those continuing disputes and to enforce its own prior orders, notably Justice Delahanty's order of May 19, 2010, removing Lavigne as trustee and directing her to turn over forthwith to Ferry, as successor trustee, all property of the Trust. *See, e.g.*, 18-B M.R.S.A. § 201(1); *Yoder*, 278 A.2d at 380.

Because the rulings of which Lavigne complains were made in Justice Marden's judicial capacity, and he did not act in the complete absence of all jurisdiction, he is entitled to judicial immunity with respect to Lavigne's claims against him in his individual capacity.

Hardy, as well, is entitled to judicial immunity to the extent that she is sued in her individual capacity. Lavigne alleges, and the *Ferry* record reflects, that Hardy acted on the orders of Justice Marden. *See* Complaint ¶ 10; 11/7/12 Order at 2. As the State Defendants observe, *see* State Defendants' Motion at 9, "[j]udicial immunity extends as well to those who carry out the orders of judges[,]" *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980).

### 3. Sovereign Immunity

Finally, as the State Defendants argue, *see* State Defendants' Motion at 10-14, sovereign immunity bars Lavigne's claims against the Superior Court, as well as against Justice Marden and Hardy in their official capacities.

"In the absence of consent, waiver, or abrogation, the Eleventh Amendment bars suit against states themselves regardless of the form of relief sought." *Irizarry-Mora v. University of P.R.*, 647 F.3d 9, 11 n.1 (1st Cir. 2011). "The doctrine of sovereign immunity extends to entities considered to be an arm-of-the-state[,]" *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 364-65 (D. Me. 2012), as well as to "official capacity" suits against state officials, "subject to a well recognized exception memorialized in *Ex parte Young*, 209 U.S. [123 (1908)] at 159-60" that "allows federal courts . . . [to] enjoin state officials to conform future conduct to the requirements

of federal law[,]" *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002) (citations and internal quotation marks omitted).  *See also, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.") (citation omitted).

The Superior Court qualifies as an arm of the state for purposes of sovereign immunity analysis.  *See, e.g., Marcello v. Maine*, 464 F. Supp.2d 38, 44 (D. Me. 2006) ("[T]he Third District Court of Newport, as part of the state judicial branch of government, is an instrumentality of the state of Maine, [and] is cloaked with immunity[.]").  And Justice Marden, an Active Retired Justice of the Superior Court, and Hardy, a Superior Court clerk, qualify as state officials.  *See* 4 M.R.S.A. §§ 104 (an Active Retired Justice "constitutes a part of the court from which that justice has retired and has the same jurisdiction and is subject to the same restrictions therein as before retirement"), 107 (Superior Court clerks are appointed by the Chief Justice of the Maine Superior Court).

The State Defendants have not consented to suit, *see* State Defendants' Motion at 10, and Congress has not abrogated the states' sovereign immunity with respect to actions brought pursuant to 42 U.S.C. § 1983, *see, e.g. Quern v. Jordan*, 440 U.S. 332, 338-45 (1979).  Nor does the *Ex Parte Young* exception apply.  The injunctive relief that Lavigne seeks is retrospective in nature: she asks that this court rescind all of the Superior Court's rulings and return the Trust to its original status.  *See* Complaint ¶ 27; *see also, e.g., Vaquería Tres Monjitas, Inc. v. Irizarry*, 600 F.3d 1, 12 n.13 (1st Cir. 2010) ("[W]hether a suit can proceed under *Ex Parte Young* turns on a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective.") (citation and internal quotation marks omitted).[6]

This court, accordingly, lacks subject matter jurisdiction over Lavigne's claims against the Superior Court and Justice Marden and Hardy in their official capacities. *See Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt.*, 644 F.3d 5, 10 (1st Cir. 2011) ("[A]lthough the Supreme Court has declined to state definitively whether the Eleventh Amendment is a doctrine of subject matter jurisdiction, the Court has stated that the Amendment is *jurisdictional* in the sense that it is a limitation on the federal court's judicial power.") (citations and internal quotation marks omitted) (emphasis in original).

For these reasons, the State Defendants are entitled to the dismissal of all claims against them.

### B.  O'Donnell's Motion

O'Donnell, like the State Defendants, characterizes the Complaint as frivolous and seeks the dismissal of Lavigne claims against him on a number of bases. *See* O'Donnell's Motion at 1-2.  Three are dispositive.

First, O'Donnell is correct that the claims against him must be dismissed pursuant to Rule 12(b)(6) for the same threshold reason argued by the State Defendants: that the Complaint fails to

---

[6] To the extent that the Complaint can be liberally read to allege violation of Lavigne's right of access to the courts, *see* Complaint ¶ 25, she seeks no relief that would fall within the parameters of the *Ex Parte Young* exception, *see id.* ¶¶ 27-28.  In any event, a court may impose reasonable restrictions on access without violating a litigant's rights. *See, e.g., Brown v. Maine*, Civil No. 11-cv-426-JD, 2012 WL 5463087, at *12 (D. Me. Nov. 7, 2012) ("One of our great rights and privileges as American citizens is the right of access to our courts.  However, with rights come responsibilities to exercise those rights in a reasonable manner. . . .  Unfortunately, when a point is reached where vexatious litigants by their own actions have seriously compromised their right of access to the courts, the courts, in the exercise of discretion, can place reasonable restrictions on that right.").  The State Defendants submit evidence that the Maine Administrative Office of the Courts did not deny Lavigne's access to the Superior Court but, rather, restricted her manner of access as a result of her disrespectful treatment of that court's staff. *See* Maddaus Letter.

satisfy basic pleading standards. *See id.* at 2 ("The Complaint fails to allege any claim for relief that would allow a reasonable reader to understand exactly what is being pled and alleged. It certainly fails to allege a specific complaint against Attorney O'Donnell[.]").

Second, and alternatively, O'Donnell is not a proper party against whom to press claims pursuant to 42 U.S.C. § 1983. In responding to O'Donnell's motion Lavigne clarifies, as she did in responding to that of the State Defendants, that she brings suit pursuant to 42 U.S.C. § 1983 for violations of her federal constitutional rights. *See* Response to Motion To Dismiss of Jan. 13, 2014 by Joseph O'Donnell, etc. (ECF No. 32) at 3. As O'Donnell points out, *see* O'Donnell's Motion at 9, a section 1983 claim can be brought only against a state actor, *see, e.g.*, *Brensinger v. Hunnewell*, No. 1:14-cv-00011-GZS, 2014 WL 2779575, at *3 (D. Me. June 19, 2014) ("To be liable under section 1983, a defendant must be a state actor.").

While Lavigne purports to sue O'Donnell in his "official capacity," Complaint at 1, an attorney representing an opposing party in litigation simply is not a "state actor" for purposes of a section 1983 claim. *See, e.g., Slotnick*, 632 F.2d at 166 (participation by a private party in litigation, without more, does not constitute state action); *Perez v. Griffin*, 304 Fed. Appx. 72, 75 (3d Cir. 2008) ("Private attorneys performing their traditional functions are not considered to act under color of state law for purposes of § 1983."). The Complaint, as its contours have been clarified by Lavigne in her response, therefore, must be dismissed as to O'Donnell pursuant to Rule 12(b)(6) for failure to state a claim against him as to which relief can be granted.[7]

Third, and alternatively, regardless of the nature of the causes of action brought against O'Donnell, the Complaint can only fairly be read, even liberally, to allege liability stemming from his role in carrying out directives in the Superior Court's order dated November 7, 2012. *See*

---

[7] To the extent that O'Donnell might be characterized as a "state actor" in complying with Justice Marden's November 7, 2012, directives, *see* 11/7/12 Order at 2, he is, nonetheless, absolutely immune for the reasons discussed below.

Complaint ¶¶ 10-13, 21; 11/7/12 Order. Specifically, Justice Marden ordered that O'Donnell prepare a deed conveying to Ferry, as trustee of the Trust, all right, title, and interest to the real estate at issue, and provide that deed to Hardy for execution and delivery. *See id.* As O'Donnell argues, *see* O'Donnell's Motion at 11-12, he, like Hardy, is entitled to absolute immunity with respect to that conduct in that he merely carried out Justice Marden's official directives, *see, e.g., Slotnick*, 632 F.2d at 166. On that ground as well, the Complaint fails to state a claim against O'Donnell as to which relief can be granted, warranting its dismissal as to him pursuant to Rule 12(b)(6).

The court, accordingly, should grant O'Donnell's motion to dismiss all claims against him.

### IV. Conclusion

For the foregoing reasons, I **DENY** Lavigne's motion, contained within ECF No. 31, that I reconsider my ruling denying her motion to amend her complaint, and recommend that the motions of the State Defendants and O'Donnell to dismiss Lavigne's claims against them, ECF Nos. 4, 13, be **GRANTED**. Should the court adopt that recommendation, I further recommend that it **DEEM MOOT** Lavigne's remaining pending motions, namely, a motion to consolidate cases, contained within ECF No. 31, and ECF Nos. 27, 28, 29, 43, and 65.

*<u>NOTICE</u>*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 13th day of July, 2014.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge